**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ROY COMBS, ID # 30807-177,** | ) | |
| **Movant,** | ) | **No. 3:08-CV-0032-N (BH)** |
| **vs.** | ) | **No. 3:03-CR-0188-N (09)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **Referred to U.S. Magistrate Judge** |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

## I.  BACKGROUND

Movant, a current inmate in the federal prison system, filed this *Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* ("Motion to Vacate") to challenge his federal conviction and sentence in Cause No. 3:03-CR-0188-N.  The respondent is the United States of America ("Government").

Movant claims that Dallas Police Narcotics Division detectives Larry Moses ("Moses"),[1] Brenita Dunn ("Dunn"), and Norman Bell ("Bell") filed trumped up charges against him in 2000 so as to extort vehicles and service for their vehicles from movant and his business, South Side Auto Sale.  (Mem. Supp. at iii-vi.)  After Bell was charged with raping a woman in one of the allegedly extorted vehicles, movant claims he falsely testified at the trial while Moses and Dunn kept close watch on him.  (*Id.*)  He asserts that he worked closely with Bell's lead attorney, Anthony Lyons, and Dunn worked closely with co-counsel, Cheryl Wattley ("Wattley").  (*Id.*)

In October 2002, movant was arrested and charged with a drug offense and possession of a

---

[1]  The record also identifies this detective as "Mosely".

firearm.  (*Id.* at v.)  He contends that Moses, Dunn, and Bell told him not to worry about the charges

because they would take care of him since he had helped Bell.  (*Id.*)  Dunn then approached him to

act as a confidential informant for the Dallas Police Department.  (*Id.*)  He retained counsel, Nan

Lollar ("Lollar"), to make sure everything would be done properly because he was on parole.  (*Id.*)

Through advice of counsel, movant entered into a contract on January 6, 2003, to make one drug

transaction.  (*Id.*)  He completed that transaction on January 24, 2003.  (*Id.* at vi.)

On June 4, 2003, the Government indicted movant and twenty-seven co-defendants for con-

spiracy, beginning on or about October 1, 2002, and continuing through the date of the indictment,

to possess more than five kilograms of cocaine with intent to distribute.  (Doc. 1.)[2]  After his arrest,

movant was ordered detained following court proceedings on June 30 and July 2, 2003.  (*See* Docs.

7, 67, 74.)  On July 9, 2003, the Government filed a superseding indictment charging him and thirty

others with a conspiracy beginning or about April 1, 2002, through June 30, 2003, to possess more

than five kilograms of cocaine with intent to distribute.  (Doc. 86 (Superseding Indictment).)

On December 17, 2003, the Court granted movant's motion to substitute Ray Jackson

("Jackson") for Lollar as his attorney in the federal proceedings.  (*See* Docs. 279, 283.)  Approx-

imately a month later, Jackson sought to reopen the detention hearing based on changed circum-

stances but withdrew the motion at a February 3, 2004 hearing.  (*See* Docs. 289, 295.)  Later in

February, the Government indicted movant and six others with the same drug conspiracy alleged in

July 2003 superseding indictment, but further charged movant with knowingly possessing a firearm

in furtherance of a drug trafficking crime.  (Doc. 361 (Second Superseding Indictment).)  On March

8, 2004, movant appeared for arraignment without counsel and pled not guilty to the charges against

---

[2] Unless stated otherwise, all document numbers refer to the docket number assigned to the document in the underlying criminal action.

him.  (*See* Doc. 404 (showing that counsel was not present for the two-minute arraignment).)  On

April 20, 2004, the Government obtained a third superseding indictment which charged movant and

seven others with the same offenses.  (Doc. 502.)  On April 30, 2004, Jackson filed a motion to sever

movant's trial from that of his co-defendants.  (Doc. 511.)

On May 10, 2004, Wattley filed a motion on movant's behalf to substitute her as counsel in

place of Jackson.  (*See* Doc. 529.)  That same day, the Court conducted a pretrial conference with

attorneys for the parties, took movant's motion for severance under advisement, scheduled trial for

May 17, 2004, and granted the motion to substitute Wattley as attorney for movant.  (Docs. 533,

538.)  Jackson appeared on behalf of movant at the conference but left after the conclusion of the

portion related to movant.  (*See* Trial Tr. Vol. 2 at 2, 6-7, 18, 21-22, 25-27, 30-32.)

The Government dismissed the firearm charge on the morning of jury selection, and trial on

the conspiracy charge began as scheduled on May 17, 2004.  (Sentencing Tr. at 5; Trial Tr. Vol. 3

at 1, 153-56; Vols. 4 through 9[3] at 1).  On May 25, 2004, movant was found guilty of the charged

conspiracy.  (Doc. 579.)  On October 25, 2004, the Court conducted a sentencing hearing and

sentenced movant to 296 months imprisonment; it entered judgment on October 28, 2004.  (Docs.

763-64.)  In determining the appropriate sentence, the Court declined to enhance the sentencing

range for movant's alleged possession of a firearm.  (Sentencing Tr. at 47.)  The Court thereafter

allowed Wattley to withdraw and appointed new counsel for appeal.  (*See* Doc. 844.)  On July 24,

2006, the Fifth Circuit Court of Appeals affirmed movant's sentence and conviction.  *See United

States v. Combs*, 191 Fed. App'x 319, 322 (5th Cir. 2006) (per curiam), *cert. denied*, 549 U.S. 1148

(2007) (as to Combs).

---

[3]  The cover and index of Volumes 7, 8, and 9 erroneously identify the volumes as V, VI, and VII.  All volumes of the
trial transcript are cited to by the volume number set out in Volume 1, the Master Chronological Index.

Movant's *pro se* motion to vacate pursuant to 28 U.S.C. § 2255 with a memorandum and appendix in support was received on January 7, 2008. (*See* Mot. Vacate at 1; Mem. Supp. at 1; App. at 1.)  He claims that he (1) received ineffective assistance of counsel from pretrial through his appeal; (2) was denied due process when the Court failed to give an entrapment instruction; and (3) was denied his right to representation and to be present during a pretrial proceeding.[4] (Mot. Vacate at 5-6, 8-9; Mem. Supp. at 1-42.)  He also seeks discovery, an evidentiary hearing, and appointment of counsel.  (Mem. Supp. at iii, 12, 18, 27, 30, 33, 41, 43-44.)  On January 16, 2008, the Court received documents omitted from the appendix submitted on January 7, 2008, including sworn answers to a questionnaire submitted by movant in a prior civil action.  (*See* Doc. 10 in civil case.) The Government responded and filed affidavits from Lollar and Wattley.[5]  (*See* Resp. in Opp'n [hereafter "Resp."]; App., (doc. 13 in civil case).)  Movant filed a reply brief attaching his own affidavit and an affidavit from a former employee, Steve Young ("Young").  (*See* Movant's Reply [hereinafter "Reply"]; Aff. of Young, attached as App. 4; Aff. Combs.)  He later provided affidavits from friends Perritha White, Michael Ford, and Beverly Spence.  (*See* Doc. 32 in civil case.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well established that "a collateral

---

[4] Although movant lists four claims in his motion and eleven issues in his supporting memorandum, he essentially asserts these three distinct claims.

[5] Although the Government provided affidavits from Lollar and Wattley, the Court has not considered those affidavits in making its recommendation.

4

challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).  Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error.  *Id.* at 232.  Even then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude."  *Id.*  The cause and prejudice test applies even to allegations of fundamental constitutional error.  *Id.*  The only exception to the application of the test is when a movant can establish a fundamental miscarriage of justice, *i.e.*, that he or she is actually innocent of the crime convicted.  *Id.*  Movant does not assert either of these exceptions.

## III.  ENTRAPMENT

In his second claim, movant asserts that the Court's failure to instruct the jury on entrapment violated his due process rights.  (Mot. Vacate at 8; Mem. Supp. at 30-33.)[6]

To succeed on an entrapment defense, "a defendant must present 'sufficient evidence from which a reasonable jury could find entrapment'", including "an initial showing that he lacked the predisposition to commit the crime, that is, that he lacked the willingness to 'commit the offense before first being approached by government agents.'" *United States v. Smith*, 481 F.3d 259, 262-63 (5th Cir.) (quoting *United States v. Bradfield*, 113 F.3d 515, 520-22 (5th Cir. 1997)), *cert. denied*, 550 U.S. 950 (2007).  The defendant must show that "the government's conduct created a substantial risk that an offense would be committed by a person other than one ready to commit it."  *Id.* at 263 (quoting *Bradfield*, 113 F.3d at 521).

---

[6] The Government contends that this claim is procedurally barred from federal collateral review.  Because this claim is more easily resolved on the merits, the Court bypasses the procedural issue.  *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) (recognizing in § 2254 context that circumstances may warrant bypassing a question of procedural default when the allegedly barred claim is more easily resolved "by looking past any procedural default").

Movant has proffered no evidence that he lacked the predisposition to commit the crime for which he was convicted. The record shows that he was dealing drugs outside his role as informant. (Trial Tr. Vol. 7 at 29-35 (testimony of Agent Hale); Trial Tr. Vol. 8 at 42-120 (testimony from Dunn). Based on the evidence before the trial court, an instruction regarding entrapment was not warranted. Accordingly, there is no due process violation for the failure of the Court to *sua sponte* instruct the jury on the defense, and this claim lacks merit.

## IV. REPRESENTATION AND PRESENCE DURING PRETRIAL PROCEEDING

In his third claim, movant asserts that he was denied his right to representation and to be present during a pretrial proceeding held on May 10, 2004. (Mem. Supp. at 41-42.)[7]

Movant was not denied his right to representation at the May 10, 2004 pretrial conference. Although the Court had signed an order whereby Wattley would be substituted for Jackson (*see* Trial Tr. Vol. 2 at 7), the order was not filed and docketed until after the hearing. Jackson, moreover, continued to represent movant's interests at the pretrial conference. (*See id.* at 2, 6-7, 18, 21-22, 25-27, 30-32.) Jackson did not leave the conference until the Court moved on to matters only concerning other defendants. (*See id.* at 30-32.) Because movant had counsel at the pretrial conference, he was not denied representation during that proceeding.

Movant's absence from the pretrial conference likewise does not violate any right to be present. A defendant need not be present for any conference or hearing on a legal question. *See* Fed. R. Crim. P. 43(b)(3). Rule 43 incorporates both the constitutional and common law rights to be present. *United States v. Alikpo*, 944 F.2d 206, 209 (5th Cir. 1991). A defendant has no right to be present at pretrial proceedings when his presence would not aid his defense, the issue at the

---

[7] The Government also contends that this claim is procedurally barred. As with the prior claim, the Court proceeds to the merits. *See Busby*, 359 F.3d at 720.

hearing was not one of guilt or innocence, and counsel was present. *United States v. Gradsky*, 434 F.2d 880, 881-83 (5th Cir. 1970). Movant has not shown that this claim entitles him to relief.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant asserts that he received ineffective assistance of counsel throughout this case, including pretrial proceedings and appeal. (Mot. Vacate at 5; Mem. Supp. at 1-30, 33-41.)  He also claims that two attorneys worked under actual conflicts of interest, (Mem. Supp. at 11, 19-22, 25-26; Reply at 16-19), and that he was constructively denied counsel, (*see* Mem. Supp. at 15-18, 41-42; Reply at 10-15).

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  To successfully state a claim of ineffective assistance of trial or appellate counsel, movant must generally demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  A failure to establish either of these prongs generally requires a finding that counsel's performance was constitutionally effective.  *Strickland*, 466 U.S. at 696.  However, when a defendant has been constructively denied counsel, the courts presume that he or she has been prejudiced, and no showing of prejudice is required.  *United States v. Cronic*, 466 U.S. 648, 659-60 (1984). "Ineffectiveness is also presumed when counsel 'actively represented conflicting interests.'"  *Id.* at 661 n.28 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

## A.  Conflict of Interest

When a prisoner shows an actual conflict that adversely affected his attorney's performance

and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel," *Cuyler v. Sullivan*, 446 U.S. 335 (1980) provides the applicable standard for evaluating claims of ineffective assistance of counsel.  *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). "Courts of appeals applying *Cuyler* traditionally have couched its test in terms of two questions:  (1) whether there was an *actual* conflict of interest, as opposed to a merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005).  However, in 2002, the Supreme Court clarified that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor,* 535 U.S. 162, 172 n.5 (2002).  "Regardless of this clarification of the terminology, the relevant questions remain the same, and [the courts] must ask whether [defense counsel] labored under a conflict of interest, which was not merely hypothetical, and whether that conflict adversely affected the representation (*i.e.*, whether it was an actual conflict)." *Infante*, 404 F.3d at 392.

"A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Medina*, 161 F.3d 867, 870 n.1 (1998) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)) (alteration in original) (internal quotation marks omitted).  There is no actual conflict of interest, however, unless "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781.  The Fifth Circuit Court of Appeals has held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation. *See Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995) (en banc).  Whether a conflict of

interest exists is a "highly fact-intensive" question that is dependent upon numerous factors, including, "whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated." *Infante*, 404 F.3d at 392.

In this case, movant suggests Lollar had a conflict of interest because he had contacted the Texas Bar regarding her conduct and she gave limited testimony at trial. (Mem. Supp. at 11.) Because movant has not shown a conflict of interest caused by multiple representation, there is no actual conflict of interest as to Lollar.

Movant also asserts that Wattley labored under an actual conflict of interest which affected her performance because he wanted to call her former client, Bell, to impeach the testimony of Dunn, Bell's former partner and good friend. (*Id.* at 19-21.) Movant argues that Wattley had divided loyalties and did not want to question Dunn about entrapment and extortion because she had defended these actions in Bell's rape trial. (*Id.* at 17-18.) He has not shown, however, that the circumstances compelled Wattley to compromise her duty of loyalty or zealous advocacy to him due to any divergent or competing interest of Bell. *See Perillo*, 205 F.3d at 781. He makes no allegation that Wattley possessed confidential information that was helpful to Bell but harmful to movant. Wattley's representation of Bell unambiguously terminated in the past, and her representation of Bell on a rape charge was not closely related in time or substance to her representation of movant in a drug case. *Infante*, 404 F.3d at 392. Movant has shown no actual conflict of interest.

**B.  Constructive Denial of Counsel**

In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court recognized that a

defendant might be constructively denied counsel although an attorney had been appointed to represent him.  466 U.S. at 654 n.11 ("[T]he performance of counsel may be so inadequate" as to constitute no assistance of counsel at all).  However, unless there is a constitutional error of such magnitude that "no amount of showing of want of prejudice would cure" the error, "there is generally no basis for finding a Sixth Amendment violation" in the absence of a showing of "how specific errors of counsel undermined the reliability of the finding of guilt."  *Id.* at 659 & n.26.  The presumed prejudice standard of *Cronic* is reserved for "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified, such as (1) a "complete denial of counsel . . . at a critical stage" of the criminal proceedings; (2) a complete failure of counsel "to subject the prosecution's case to meaningful adversarial testing"; and (3) "circumstances [that] made it so unlikely that any lawyer could provide effective assistance".  *See Cronic*, 466 U.S. at 658-662; *accord Bell v. Cone*, 535 U.S. 685, 695-96 (2002).  Movant has the burden to show that he was constructively denied counsel.  *See Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).

Movant argues that he was denied counsel at several critical stages:  (1) when Jackson signed on as substitute counsel rather than co-counsel with Lollar; (2) at the pretrial conference held on May 10, 2004; and (3) when Lollar did not attend a November 3, 2003 scheduled meeting between Dunn, the Government, and Agent Hale.  (Mem. Supp. at 5-6, 16-17, 41; Reply at 6-7 & n.2.)  These arguments are frivolous.  *Cronic* does not stand for the proposition that a denial of counsel occurs when a defendant is not represented by multiple attorneys or even a particular attorney.[8]  As

---

[8] Although movant initially claimed the Jackson substitution was a denial of counsel because Jackson was absent from the February 3, 2004 hearing on his motion to reopen detention, he later conceded that Jackson was only tardy.  (*See* Reply at 10 & n.5., 12; Doc. 295.)  He has not shown a complete denial of counsel on this basis.

discussed, movant was not denied counsel at the May 10, 2004 pretrial conference.  Nor was he denied counsel because his attorney failed to attend a meeting between a potential witness and the Government.

Movant also contends he was denied counsel when Jackson was absent from his March 8, 2004 arraignment.  In *Hamilton v. Alabama*, 368 U.S. 52, 53 (1961), the Supreme Court held that arraignment in Alabama is a critical stage of the criminal process because certain matters had to be pleaded at such arraignment or the defendant would lose the right to assert them.  The mere fact that a hearing is identified as an arraignment does not mean the hearing is a critical step in the proceedings, however.  *See Rothgery v. Gillespie County, Tex.*, 128 S. Ct. 2578, 2594 (2008) (Alito, J., concurring) (recognizing that only "certain kinds of arraignments" qualify as a critical stage).  A critical stage is "a step of a criminal proceeding" which holds "significant consequences for the accused."  *Bell v. Cone*, 535 U.S. 685, 695-96 (2002).  The March 8, 2004 arraignment in this case was not a critical stage because movant was merely entering a plea of not guilty.

Movant also contends that counsel failed to subject the prosecution's case to meaningful adversarial testing, the second scenario in *Cronic*.  (Mem. Supp. at 15-18, 41-42; Reply at 10-15.) There is no constructive denial of counsel when defense counsel has merely failed to oppose the prosecution at specific points of the proceedings – it only occurs when counsel has *entirely* failed to challenge the prosecution's case.  *Bell*, 535 U.S. at 697.  When counsel provides "some meaningful assistance", as here, the *Cronic* standard is inapplicable.  *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986).

Movant has not carried his burden to show that he was constructively denied counsel, and *Strickland* provides the applicable standard of review for his claims of ineffective assistance.

11

## C. *Strickland* **Standard**

As noted above, *Strickland* requires movant to demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. at 687; *Phillips*, 210 F.3d at 348. In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

### 1. *Lollar*

Movant claims that Lollar rendered ineffective assistance prior to trial when she (i) advised him to enter into a contract to be a confidential informant for the Dallas Police Department; (ii) failed to contact authorities regarding that contract even after he was arrested in June 2003; (iii) assured him that he would not be charged in this case because of his status as an informant; (iv) failed to attend a November 3, 2003 meeting between Dunn and the Government; and (v) failed to give him documents, discovery, or investigatory material. (Mem. Supp. at 1-12.)

Movant claims prejudice because had counsel understood the contract and gone through

proper channels to assure that he could act as a confidential informant despite being on parole,[9] he may not have been approved to be an informant and he may not have been involved in the activity that led to his arrest. Speculation, conjecture, and conclusory allegations are insufficient to establish prejudice. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992); *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989). As for his other claims, movant has not shown how Lollar's absence from the meeting or the failure to provide him documents prejudiced him. In short, movant has shown no reasonable probability that the outcome of his trial would have differed but for Lollar's actions.[10]

### 2. *Jackson*

Movant claims that Jackson rendered ineffective assistance when he (i) replaced Lollar as lead counsel instead of merely assisting her; (ii) was unprepared for his detention hearing after seeking to reopen the detention issue; (iii) missed rearraignment in March 2004; (iv) improperly moved for a severance; and (v) failed to file a motion to suppress. (Mem. Supp. at 12-18.)

There is no deficiency in Jackson assuming the role of lead counsel in place of Lollar. Movant himself signed the motion to substitute Jackson for Lollar and allowed Lollar to withdraw from the case. (*See* Doc. 279.) Movant has not overcome the presumption that such action falls within the broad scope of reasonable assistance. He has also shown no reasonable probability that the outcome of his trial would have differed had Jackson taken a secondary role to Lollar, especially since movant retained Wattley before trial to represent him.

---

[9] There was testimony at trial that the police department was required to obtain approval from the proper state judge for a parolee to be used as an informant; this procedure was not followed with movant. (*See* Trial Tr. Vol. 8 at 99.)

[10] Although movant provides an affidavit from Perritha White, the affidavit creates no fact issue regarding prejudice from Lollar's representation. (*See* Doc. 32 in civil action.) It primarily contests averments made by her, but the Court has not considered Lollar's affidavit in making this recommendation.

Movant has also shown no prejudice resulting from the detention hearing and missed rearraignment. The record does not reflect that his pretrial detention had any impact on his conviction or sentence. Movant's plea of not guilty at the arraignment held on March 8, 2004, preserved all of his constitutional rights and had no impact on his conviction or sentence. Movant has shown no reasonable probability that but for these alleged deficiencies, the outcome of his trial or sentencing would have differed.

As for Jackson's motion practice, there were adequate reasons to move for severance, and movant identifies no basis for suppressing any evidence related to the dismissed gun charge. (Reply at 41.) The gun charge (Count 2) was dismissed prior to trial and the Court declined to enhance movant's sentence based upon possession of a firearm. Counsel is not required to make frivolous motions to render effective assistance of counsel. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Movant has not overcome the presumption that Jackson's motion practice falls within the broad scope of reasonable assistance. Nor has movant shown a reasonable probability that his conviction or sentence would have been altered. Movant's claims against Jackson warrant no relief in this § 2255 action.

### 3. *Wattley*

Movant claims that Wattley rendered ineffective assistance when she (i) represented him under a conflict of interest; (ii) failed to file a motion for continuance after she was substituted for Jackson a week before trial; (iii) made comments regarding the dismissal of Count 2 of the indictment; (iv) improperly questioned Detective Dunn; (v) failed to challenge exhibits; (vi) failed to call favorable witnesses; (vii) failed to assert an entrapment defense; and (viii) refused to permit him to testify on his own behalf. (Mem. Supp. at 19-30, 36-41.) These claims entitle him to no relief.

14

As already discussed, Wattley did not represent movant under any actual conflict of interest. Movant has not shown that any potential conflict prejudiced him. Nor has movant shown a reasonable probability that the failure to file a continuance altered the outcome of trial or sentencing. The motion to substitute Wattley for Jackson specifically indicated that the substitution would not delay trial. (*See* Doc. 529.) After trial, Wattley specifically informed movant that the Court would have denied a motion for continuance, denied the substitution of counsel, and required Jackson to present the case to the jury. (*See* App. 12D.) Even if the Court were inclined to grant a continuance, however, movant has not shown a reasonable probability that the outcome of trial would have been different if counsel had additional time.[11]

Movant also complains that Wattley made statements "to the effect that the government would dismiss count two of the indictment if counsel would question ex-detective Norman Bell in a certain way." (Mem. Supp. at 23.) Bell did not testify in this action (*see* Trial Tr. Vol. 2-8 (showing no testimony by Bell), and Count 2 was dismissed prior to trial (*see* Trial Tr. Vol. 2 at 153-56 (showing that conspiracy was only charge presented to the jury); Sentencing Tr. at 5 (indicating that government dismissed the firearm charge)). Movant has shown no reasonable probability that the outcome of his trial or sentence would have differed in the absence of the comments.

Movant also claims that Wattley cross-examined Detective Dunn without knowing what the witness would say, and that the cross-examination merely served to allow a "prosecution witness to give prejury [sic] testimony". (Mem. Supp. at 23.) He later argues that because he provided Wattley the allegedly newly discovered evidence about Dunn, she knew what Dunn would say but

---

[11] Movant provides three affidavits which address Wattley's failure to seek a continuance of trial. (*See* Doc. 32 in civil action.) The affidavits, however, provide nothing to create a fact issue regarding that failure or any other deficiency of counsel. With respect to Wattley's representation, White's affidavit primarily contests averments in Wattley's affidavit that were not considered in making this recommendation.

failed to properly question him due to a conflict of interest.  (Reply at 20.)  Based on his latest characterization, this claim is essentially a reiteration of movant's conflict of interest claim.  As already stated, movant has shown no prejudice from any potential conflict of interest.  To the extent that movant is claiming counsel failed to investigate what Dunn would say, a conclusory failure to investigate claim is insufficient to obtain collateral relief in this § 2255 action.  *See*, *e.g.*, *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).  Furthermore, testimony from Dunn was necessary to give credibility to movant's defense that he was working as an informant for Dunn and had called her about drug deals involving an Hispanic male.  (*See* Trial Tr. Vol. 8 at 47-100.)  Even if Dunn provided damaging testimony on cross-examination by the Government in addition to the helpful testimony on direct examination, this does not create a reasonable probability that the out-come of at trial would have differed had counsel conducted additional investigation.

Movant also claims that Wattley did not know about certain exhibits offered during Dunn's testimony and failed to challenge them.  (Mem. Supp. at 25, 40-41.)  Because the exhibits were defense exhibits, counsel had advance knowledge of them and no basis to challenge them.[12]

Movant next claims that counsel failed to call favorable witnesses.  (Mem. Supp. at 38-39; Reply at 20-23.)  To succeed on this claim, movant must show that such witnesses were available, their testimony would have been favorable, and they would have been willing to testify on his behalf.  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985).  Complaints of uncalled wit-nesses are not favored because the presentation of testimonial evidence is a matter of trial strategy

---

[12] Movant also claims that he did not receive the exhibits prior to trial.  (Mem. Supp. at 40-41; App. 13A and 13B.)  The Government construes the claim as one of ineffective assistance rather than a failure by the Government in violation of *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963); or *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  (Resp. at 16.)  Movant does not oppose that construction.  (*See generally* Reply.)  Because the documents relate to the validity of state criminal charges against movant and are not directly related to the federal offense, this claim fails even if construed as a claim under *Brady*, *Giglio*, or *Napue*.

and because allegations of what a witness would have testified to are largely speculative. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice. *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). Movant provides an affidavit from his former employee, Steve Young, who avers that he was available and willing to testify that movant "was not involved with illegal activities namely drugs" and about Moses' and Dunn's actions in April through June 2003. (Aff. of Young, attached as App. 4 to Reply.) He also provides his own conclusory statements as to what other uncalled witnesses would have testified. Because the fact that movant was an informant was undisputed at trial, he has not shown a reasonable probability that further testimony from Young or other witnesses about his status would have altered the outcome at trial.

Movant also claims that his attorney failed to pursue an entrapment defense. (Mem. Supp. at 36-37; Reply at 24-31.) He claims that the trumped up charges in October 2002 were merely to induce him into participating in the drug conspiracy. (Reply at 25.) To show prejudice from such failure, a movant "must show that the defense likely would have been successful at trial." *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). As discussed, an entrapment instruction was not warranted on the facts presented at trial, and counsel did not render deficient representation by failing to pursue one. Movant has not shown a reasonable probability that had counsel pursued such defense, the outcome of his trial would have differed, the Court would have granted the motion, or the jury would have reached a different verdict.

In his final claim against Wattley, movant claims that she refused to permit him to testify on his own behalf and that "there were facts in the case that she was not aware of and that [he] was the

17

only person to refute the testimony of these witness[es]." (Mem. Supp. at 27.)  Criminal defendants

have the right to testify in their own defense. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987).  Only

the defendant may waive this well-established right. *United States v. Brown*, 217 F.3d 247, 258 (5th

Cir. 2000).  When a defendant claims that trial counsel interfered with his right to testify and was

thus ineffective, the claim is governed by the well-established *Strickland* standard.  *United States*

*v. Mullins*, 315 F.3d 449, 452-53 (5th Cir. 2002); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir.

2001).  Movant did not identify the facts that were unknown to counsel and that would have been

elicited through his testimony.  Nor did he specify the testimony that he would have refuted other

than to state that his testimony would "inter alia, impeach the government and defense witness

detective Brenita Dunn." (Reply at 32.)  In light of movant's extensive criminal history and the facts

of this case, the likelihood that the jury would credit his testimony over testimony from Detective

Dunn or the government's witnesses "does not meet the reasonable probability of a different out-

come test." *See Mullins*, 315 F.3d at 456.  Movant has not shown that the outcome of his trial would

have differed if he had testified.

### 4. *Appellate Attorney*

Finally, movant claims that his appellate attorney rendered ineffective assistance by failing

to raise three issues on appeal:  (i) entrapment; (ii) perjured testimony; and (iii) ineffective assistance

of counsel.  (Mem. Supp. at 33-38; Reply at 36-38.)

To be effective, counsel need not raise every non-frivolous issue on appeal.  *United States*

*v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  "Instead, to be deficient, the decision not to raise

an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210

F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  "[A]

reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful.  Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."  *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted).  To determine whether movant's appellate counsel was deficient, the Court must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal."  *Phillips*, 210 F.3d at 348.

Although appellate counsel failed to raise ineffective assistance on appeal, this issue is not typically raised on appeal.  *United States v. Garcia*, ___ F.3d ___, ___, No. 05-41424, 2009 WL 1227956, at *6 (5th Cir. May 6, 2009).  Moreover, as already found, neither this claim nor movant's entrapment claim have merit.  Movant has not shown that the failure to raise the claims on appeal constituted deficient performance.

The perjury claim is conclusory in that movant does not identify the alleged untrue testimony or how it affected the outcome of his trial or sentencing.[13]  (*See* Reply at 36-38 (discussing claims of ineffective assistance of appellate counsel without providing any greater detail).)  This conclusory claim is insufficient to obtain relief under § 2255.  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).  Additionally, in the context of denying motion for new trial on the basis of allegedly newly discovered evidence impeaching the credibility of Detective Dunn and Antonio Cruz,  the District Court declined to find that the evidence would probably alter the outcome of trial.  (*See* Order of Oct. 25, 2004, doc. 763.)  Appellate counsel's failure to raise the perjury claim on appeal likewise was not deficient.

---

[13] Although movant does not expressly identify the alleged perjurers in his motion, he attaches a page from the brief filed by his appellate attorney reflecting movant's allegations that Antonio Cruz, Detective Dunn, and Agent Hale provided perjured testimony.  (*See* App. 16 contained within doc. 10 in civil action).

In conclusion, none of movant's claims against his various attorneys entitles him to relief.

## VI.  DISCOVERY, EVIDENTIARY HEARING, AND APPOINTMENT OF COUNSEL

Movant seeks leave to conduct discovery, an evidentiary hearing, and appointment of counsel.  (*See*, *e.g.*, Mem. Supp. at iii, 43-44; Reply at 16, 22, 43-49.)

Section 2255 of Title 28 of the United States Code provides that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  "[B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing."  *Ross v. Estelle*, 694 F.2d 1008, 1012 n.2 (5th Cir. 1983); *accord United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (noting that "[i]f the defendant produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties, she is entitled to an evidentiary hearing on the issue"); *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980) (noting that mere conclusory allegations are not sufficient to support a request for an evidentiary hearing).  Although movant has provided affidavits to support his claims, the affidavits create no factual issue necessary to the resolution of this action.  The files and records of this case conclusively show that movant is entitled to no relief, and his request for an evidentiary hearing should be denied.

Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides for appointment of counsel only when an evidentiary hearing is required or the interests of justice otherwise requires appointment.  Because the Court has determined that an evidentiary hearing is not required in this case and justice does not require the appointment of

counsel, movant's request for appointment of counsel should be denied.[14]

Finally, although Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts grants the Court discretion to authorize discovery upon a showing of good cause, conclusory allegations do not suffice. *See United States v. Webster*, 392 F.3d 787, 801-02 (5th Cir. 2004) (holding that "[c]onclusional allegations are insufficient to warrant discovery; the petitioner must set forth specific allegations of fact"). The requesting party "must provide reasons for the request" and "include any proposed interrogatories and requests for admission, and must specify any requested documents." *See* Section 2255 Rule 6(b). Although movant identifies specific documents and other information that he seeks through discovery (*see* Reply at 44-47), he makes no showing of good cause. Although he provides affidavits to support his claims, the affidavits provide no basis to grant relief in this action or otherwise provide a basis for discovery, and his request for discovery should be denied.

## VII. RECOMMENDATION

The Court should **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice as well as movant's requests in his motion and reply for discovery, an evidentiary hearing, and appointment of counsel.

**SIGNED this 20th day of May, 2009.**

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[14] Separate motions for appointment of counsel and for evidentiary hearing have already been denied. (*See* Docs. 15, 21, and 26 in civil action.)

21

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE